# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**NEVIN KERR WHETSTONE**                                                 **PLAINTIFF**

**V.**                                     **CIVIL ACTION NO.: 4:17CV158-JMV**

**ANGELA BROWN, ET AL.**                                          **DEFENDANTS**

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is the Defendants' motion for summary judgment, and Plaintiff's responses thereto. The parties having consented to U.S. Magistrate Judge jurisdiction in this case in accordance with 28 U.S.C. § 636(c), the undersigned has the authority to enter this order and the accompanying final judgment.

### I.
### Plaintiff's Allegations

Years ago, Nevin Whetstone suffered an injury to his sacrum[1] that required him to periodically seek the services of a medical professional to manipulate it back in place. Unable to receive regular manipulations once imprisoned, Whetstone claims that his sacrum locked into place in 1990, causing him to suffer a lower tract problem and, eventually, a spinal collapse.

Whetstone alleges that he has continually sought osteopathic, chiropractic, and/or orthopedic specialist services in his over two decades of incarceration, but that he has never seen an off-site physician or had tests run. Doc. #68-2 at 2. He claims that Nurse Hill, a nurse at the Central Mississippi Correctional Facility ("CMCF"), told him in 2011 that authorizing officials would not approve him to see a specialist, and that medical providers at the Mississippi State

---

[1] The sacrum is "the part of the spinal column that is directly connected with or forms a part of the pelvis and in humans consists of five fused vertebrae." *See* https://www.merriam-webster.com/dictionary/sacrum (last visited March 1, 2019).

Penitentiary at Parchman ("Parchman"), such as Angela Brown and Pam Jarrett, minimize his condition. Whetstone contends that though he has seen medical professionals regularly, none of them provide any adequate treatment, which is causing him to grow increasingly immobile as his range of motion decreases.

## II.
## Procedural History

After review of Whetstone's complaint alleging an unconstitutional denial of medical care, the Court held a *Spears*[2] hearing and thereafter ordered process to issue for Angela Brown, Pam Jarrett, and Nurse Hill. Doc. #18.[3] On May 21, 2018, counsel for Defendants Jarrett and Brown entered a waiver of service, later filing a timely answer on behalf of said Defendants. *See* Docs. #33, #34, & #39. However, counsel for Defendants moved for a more definite statement as to the identity of "Nurse Hill" in order to identify her and determine whether she is an employee of Centurion, the contract medical provider for the Mississippi Department of Corrections ("MDOC"), for whom it must provide a defense. Doc. #40. The Court entered an order granting Centurion's motion regarding Whetstone's legal claims against Nurse Hill, but it determined that Whetstone had identified Nurse Hill as an individual employed by Wexford Medical at CMCF in 2011. Doc. #47. As such, it determined that Whetstone had provided sufficient information for Centurion to determine whether Nurse Hill is or was a Centurion employee. *Id.*

In response to the Court's order regarding a more definite statement, Whetstone identified "Nurse Hill [as] the first defendant who was fully apprised of plaintiff's problem; she was seen twice in 2011." Doc. #51 at 1. He further contended that Nurse Hill documented his spinal disorder in medical records following a medical evaluation in February 2012. *Id.* In reply, counsel

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3] Other defendants and claims were dismissed by Order entered following the hearing. *See* Doc. #17.

for Centurion stated that it was unable to identify Nurse Hill, and it further noted that Centurion was not the medical provider for MDOC until 2015, well past the relevant time period of Whetstone's allegations. Doc. #54.

Subsequently, Whetstone moved the Court to issue process against the Nurse Hill who worked at the CMCF for Wexford Medical in 2011 and 2012. Doc. #56. This Court granted the order, and process issued against Nurse Hill, *via* Wexford Medical. Doc. #57. The summons was returned unexecuted in October 2018, however, as the process server was unable to identify her for service. Doc. #60. On November 13, 2018, Whetstone submitted a motion to compel Wexford Medical to provide Nurse Hill's identity to the Court. Doc. #67.

On November 19, 2018, Defendants filed the pending motion for summary judgment. Doc. #68. On November 21, 2018, this Court entered an order denying Whetstone's motion to compel and requiring him to show cause why Nurse Hill should not be dismissed from this action, noting, in part:

> This Court has issued process for Nurse Hill twice already, and Wexford Medical has been unable to identify her as an employee of the agency. *See, e.g.*, Docs. #18, #27, #57, #58, & #60. Counsel for Defendants who have appeared in this action have investigated, and they have been unable to determine the identity of Nurse Hill. Doc. #54. It is apparent that "Nurse Hill" cannot be identified as a proper defendant based on the information provided by Plaintiff. Therefore, the Court finds that it would be futile to grant Plaintiff's motion, and the motion will be denied.
>
> Additionally, the Court notes that Plaintiff filed the instant lawsuit in late 2017. *See* Doc. #1. As the Court noted at the time of Plaintiff's *Spears* hearing, it was not apparent at the onset of this case that Nurse Hill's involvement in the allegations of this lawsuit were limited to events that occurred around 2011. *See* Doc. #17. Plaintiff's subsequent communications with the Court, however, demonstrate that her involvement in the issues related to this lawsuit were in fact limited to 2011 and 2012. *See, e.g.,* Doc. #51. Therefore, Plaintiff's allegations against Nurse Hill cannot be sustained in this lawsuit, as they are barred by Mississippi's three-year statute of limitations. *See e.g., Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Owens v. Okure*, 488 U.S. 235, 250 (1989); *see also* Miss. Code Ann. § 15-1-49. Accordingly, the Court finds that Plaintiff must show cause why Nurse Hill should

> not be dismissed from this lawsuit, as Mississippi's statute of limitations bars Plaintiff's claims against her. *See, e.g., Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993) (holding courts may dismiss claims *sua sponte* under 28 U.S.C. § 1915(d) where it is clear that the claim is barred by the applicable statute of limitations).

Doc. #72. On or about December 11, 2018, Whetstone filed a response to the order to show cause, maintaining that Wexford is deliberately stone-walling the Court, and that the United States Marshals are capable of finding Nurse Hill. *See, e.g.*, Doc. #77. He otherwise argues that Nurse Hill is an integral part of his case, and that this Court should require her to answer his allegations based on the "continuing violation doctrine" in federal common law, as she was the medical professional who documented that he had a spinal condition and who stated that prison officials would not authorize the treatment he needed. *Id.* at 2-3.

On January 17, 2019, the Court entered an order requiring Defendants to supplement their summary judgment response and providing Whetstone an opportunity to supplement his summary judgment response. *See* Doc. #78. Defendants and Whetstone each timely filed a supplement, and Whetstone subsequently alleged that Defendants' summary judgment proof was manufactured. *See* Docs. #79, #84, #87. On February 11, 2019, counsel for Defendants submitted a suggestion of death for Defendant Pamela Jarrett. Doc. #83. On or about February 13, 2019, Whetstone filed a motion seeking to substitute Centurion of Mississippi, Nurse Hill, and Angela Brown as parties in place of Pamela Jarrett. Doc. #86. Defendants did not respond to the motion.

### III.
### Nurse Hill & Show Cause Response

The Court finds that Nurse Hill is entitled to be dismissed from this action. Nurse Hill's interaction with Whetstone ceased upon his transfer to Parchman in 2011 or 2012. *See, e.g.*, Doc. #1 at 4. Her discrete treatment of Whetstone at CMCF approximately five years prior to this suit being filed is not part of a "continuing violation." Moreover, even assuming the applicability of

the continuing violation doctrine to Whetstone's case, it is not applicable where there is no continuing denial of medical care. *See Grumbles v. Livingston*, 706 F. App'x 818 (5th Cir. 2017); *Nottingham v. Richardson*, 499 F. App'x 368, 375 (5th Cir. 2012). In this case, Nurse Hill examined him, documented that he had a serious medical condition, and put in an order for him to see a chiropractor, which was denied. *See* Doc. #1 at 3. Accordingly, Nurse Hill is entitled to be dismissed from this action, as the statute of limitations against her has expired. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Owens v. Okure*, 488 U.S. 235, 250 (1989); *see also* Miss. Code Ann. § 15-1-49.

## IV.
## Summary Judgment Standard

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (citation omitted). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citation omitted).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Celotex*, 477 U.S. at 323. That is, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Beck*, 204 F.3d at 633. The nonmovant cannot rely upon "conclusory

allegations, speculation, and unsubstantiated assertions" to satisfy his burden, but rather, must set forth specific facts showing the existence of a genuine issue as to every essential element of his claim. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted); *Morris*, 144 F.3d at 380. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no proof is presented, however, the Court does not assume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita,* 475 U.S. at 586 (emphasis added). Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)) (quotation marks omitted).

Once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). "When

6

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

V.
**Discussion**

A. **Exhaustion of Administrative Remedies**

Defendants maintain that they are entitled to dismissal from this action, as Whetstone failed to exhaust his administrative remedies prior to filing the instant lawsuit. Because Whetstone was incarcerated when he filed this case, the Prison Litigation Reform Act ("PLRA") applies to this case. *See* 28 U.S.C. § 1915. The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

To properly exhaust administrative remedies, a prisoner's administrative grievance "must give prison officials 'fair notice' of the problem that will later form the basis of the prisoner's suit." *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004). The specificity required in the process is dictated by the grievance rules of the particular system. *Id*. at 517.

MDOC has been granted the statutory authority to adopt an administrative review procedure at each of its correctional facilities. Pursuant to this authority, it has established an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. *See* Miss. Code Ann. § 47-5-801. This process requires a prisoner to "present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident." *Sears v. Shaw*, No. 5:14CV65-DCB-JCG, 2016 WL 1068745, at *5 (S.D. Miss. Feb. 1, 2016), *report and*

7

*recommendation adopted,* No. 5:14-CV-65-DCB-JCG, 2016 WL 1069094 (S.D. Miss. Mar. 17, 2016) (quoting MDOC Inmate Handbook, Ch. VIII, Administrative Remedy Program).

MDOC's ARP process is a two-step process that begins when an inmate first submits his grievance in writing to the prison's legal claims adjudicator within thirty days of the complained-of incident. *See, e.g., Yankton v. Epps*, 652 F. App'x 242, 245 (5th Cir. 2016). The adjudicator screens the grievance and determines whether to accept it into the ARP process. *Id*. If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate. *Id.* If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate ARP form. *Id.* The Warden or other MDOC official will then issue a final ruling, or Second Step Response, which completes the ARP process. *Id*. If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id*.

The exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). It "applies to all inmate suits about prison life" and must be adhered to "irrespective of the forms of relief sought and offered through administrative avenues." *Id*. at 532; *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The Fifth Circuit has held that "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *see also Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003) (holding that the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement).

Whetstone concedes that he submitted an ARP grievance in January 2017 that was incomplete. Doc. #1 at 3. On January 23, 2017, the ARP director placed Whetstone on notice that his grievance was unclear and instructed him on how to correct the deficiency. Doc. #68-1. Whetstone stated at his *Spears* hearing that this was the case, and he admits that he never corrected the ARP. Doc. #68-2 at 4.

8

Upon review of the ARP grievance submitted by Whetstone, the Court agrees that Whetstone did not name any official or even attempt to describe the person against whom his grievance was lodged. Doc. #69-1. While he complains about his deteriorating medical condition in the grievance, he never identified a treatment that he was denied. *Id*. Therefore, Whetstone provided Defendants no "fair notice" of the issues raised in complaint.

Whetstone claims that he was not required to exhaust his ARP in 2017, as he submitted an ARP in August 2011 while at Parchman about the same, continuing issue. *See* Doc. #77. Assuming, *arguendo*, that Whetstone's 2011 ARP grievance was exhausted, the Court notes that Whetstone's treatment at Parchman was six years removed from his complaint at CMCF and involved separate incidents, even if his complaint was generally about his physical condition. The Fifth Circuit has rejected the notion that a single previously-filed grievance constitutes perpetual, continual exhaustion of a problem. See *Johnson v. Johnson*, 385 F.3d 503, 521 n. 13 (5th Cir. 2004) (noting that "a grievance filed in response to one particular incident [does not] automatically exhausts claims that arise from future incidents of the same general type"). Accordingly, the Court finds that Whetstone failed exhaust his administrative remedies, and his claims against Defendants must be dismissed pursuant to 42 U.S.C. § 1997e(a).

**B. Denial of Medical Care**

Despite its procedural ruling, the Court nonetheless considers whether Whetstone has been denied constitutionally adequate medical care. A plaintiff's constitutional right to medical care is abridged only if officials acted with deliberate indifference to his medical needs, as deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1978). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Under this standard, a state actor is not liable

under § 1983 unless the plaintiff alleges facts which, if true, would demonstrate that the prison official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847.

Negligent conduct by a prison official does not give rise to a constitutional violation. *Daniels v. Williams*, 474 U.S. 327 (1986); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Moreover, a plaintiff's disagreement with the course of medical treatment chosen will not support a claim of deliberate indifference. *See, e.g.*, *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). "[T]he decision whether to provide additional treatment 'is a classic example of a matter for medical judgment,'" and a prisoner's disagreement with his medical treatment, absent exceptional circumstances, does not satisfy the deliberate indifference standard. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citing *Estelle*, 429 U.S. at 107). In fact, even a misdiagnosis or mistreatment of the plaintiff's condition in what amounts to medical malpractice fails to satisfy the deliberate indifference standard. *See, e.g., Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (finding medical malpractice alone does not support §1983 cause of action). Rather, liability under this demanding standard requires the plaintiff to produce evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs. *Davidson v. Texas Dept. of Crim. J.*, 91 F. App'x 963, 965 (5th Cir. 2004) (citation omitted); *see also Gobert*, 463 F.3d at 346 (holding that deliberate indifference requires inmate to show prison officials engaged in conduct that "clearly evince[s] a wanton disregard for any serious medical needs").

Whetstone suffers from degenerative disc disease. *See, e.g.*, Doc. #73 at 2. Whetstone was diagnosed with spondylolisthesis, or the forward displacement of one vertebra over another, in

2013.[4]  *See* Doc. # 79-1; *see also* https://www.spineuniverse.com/conditions/spondylolisthesis (last visited February 28, 2019).  In support of their motion for summary judgment, Defendants have produced the declaration of Dr. Santos, a medical doctor employed by Centurion, who treats inmates in the custody of MDOC.  Doc. #79-1.  In his affidavit, Dr. Santos states that he has reviewed Whetstone's records and avers that "appropriate treatment for Spondylolisthesis with no acute neurological deficits is nonsurgical conservative treatment such as nonsteroidal anti-inflammatory drugs, physical therapy, or support." *Id*. at ¶ 5.  Dr. Santos asserts that Whetstone's records establish that he has been regularly monitored, and that testing has demonstrated that he has "no acute neurological deficits."  *Id*. at ¶7.  Dr. Santos otherwise notes that Whetstone has been routinely prescribed calcium antacids for bone strength, Vitamin D for bone strength, aspirin and ibuprofen for pain.  *Id*. at ¶¶ 8-10.  He additionally notes that Whetstone has been provided lay-in tray services, a bottom bunk, and provided a walking cane.  *Id*. at ¶11.

In response to Defendants' motion, Whetstone argues that the declaration provided by Dr. Santos is a creation of defense counsel that should not be credited.  Doc. #87 at 1-7.  Specifically, he claims that MDOC has no competent medical professionals, and that any "treatment" he receives, such as medication and a cane, are the result of his constant demands and not because of any independent action by medical staff.  *See id*.

The Court finds that Whetstone's medical records confirm that he regularly receives medications to treat his symptoms, and that he has been provided with a bottom bunk, a walking cane, and a lay-in tray services.  *See, e.g.,* Doc. #84 at 18-19, 22.; Doc. #77 at 4, 17.[5]  His records

---

[4] Whetstone also has retrolisthesis, or backwards slippage of one vertebra over another, on some of his vertebrae. *See, e.g*., Doc. #73 at 22.  *See* https://www.spineuniverse.com/conditions/spondylolisthesis/retrolisthesis-differs-spondylolisthesis (last accessed February 28, 2019).

[5] Whetstone denies that he receives lay-in tray services.  Doc. #87 at 7.  However, his medical records suggest that they have been authorized and that he has refused such services.  *See* Doc. #84-1 at 20.

11

demonstrate that he receives regular monitoring and treatment for his degenerative spinal condition. *See, e.g.*, Doc. #68-2; Doc. #84-1 at 30, 48, 80, 100. Both Defendant Jarrett and Defendant Brown have ordered x-rays of Whetstone's spine, and Defendant Brown has prescribed medication for Whetstone on numerous occasions. *See* Doc. #68-2; Doc. #73 at 2, 17, 22, 26, 59, 61-63. The Court finds that these records of examinations, diagnoses, and medications rebut Whetstone's allegation that he has been denied constitutionally adequate medical care. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (1995) (noting records "may rebut an inmate's allegations of deliberate indifference").

The Court notes that in *Thomas v. Pate*, cited with approval in *Estelle v. Gamble*, 429 U.S. 97 104-05 (1976), the circuit court held that, in some cases, "it is sufficient to allege facts which suggest that the medical care provided is so clearly inadequate as to amount to a refusal to provide essential care or is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974). Such is not the case here. While Whetstone argues that monitoring and medication refills do not constitute "treatment," his allegation is at odds with Dr. Santos' declaration regarding the appropriate treatment for his condition. Moreover, there is no indication from Whetstone's medical records, which include radiology reports and notes from others not employed by MDOC or its contract medical providers, that any individual Defendant has interfered with any suggested treatment.

Accordingly, the Court finds that Whetstone has stated only a dissatisfaction with the level of medical care he has received, and the fact that Whetstone desires additional treatment is insufficient to raise an issue of material fact on a claim of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Defendants are entitled to summary judgment.

# VI.
## Conclusion

Defendants' motion for summary judgment [68] is **GRANTED**, and all Defendants are fully and finally dismissed from this action with prejudice. Inasmuch as Whetstone's claims fail to state an actionable claim against any Defendant in this action, his motion to substitute a party [86] is **DENIED** as moot. A final judgment consistent with this Order will enter today.

**SO ORDERED**, this 4th day of March, 2019.

/s/ Jane M. Virde
MAGISTRATE JUDGE JANE M. VIRDEN